Steven A. Alpert, NV Bar # 8353
**PRICE LAW GROUP, APC**
5940 S Rainbow Blvd, Suite 3014
Las Vegas, NV 89118
T: (702) 794-2008
F: (866) 401-1457
alpert@pricelawgroup.com

*Attorneys for Plaintiff*
*Rastelli Regalado*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RASTELLI REGALADO,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION LLC; and AMERICREDIT FINANCIAL SERVICES, INC., d/b/a GM FINANCIAL,<br><br>Defendants. | **Case No.:** 2:22-cv-1309<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Rastelli Regalado, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union LLC ("Trans Union") (collectively referenced as the "CRA Defendants"); and AmeriCredit Financial Services, Inc., d/b/a GM Financial ("GM") (CRA Defendants and GM are collectively referenced as "Defendants").

//

1

## I. INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against the CRA Defendants, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2. Plaintiff's Complaint also alleges violations of the FCRA, against Defendant GM Financial for failing to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax, and Trans Union.

## II. JURISDICTION AND VENUE

3. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Defendants transact business here; as such, personal jurisdiction is established.

## III. PARTIES

6. Plaintiff Rastelli Regalado is a natural person residing in the city of Las Vegas, Nevada.

7. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant GM is a financial institution engaged in the business of giving credit and collecting debt. GM is also a *furnisher*, as contemplated in 15 U.S.C. § 1681s-2. Upon information and belief, GM is regularly engaged in the business of furnishing credit information to the

2

consumer reporting agencies. GM is headquartered at 801 Cherry Street, Ste. 3500, Fort Worth, TX 76102. GM can be served through its registered agent, Corporation Service Company, located at 112 North Curry Street, Carson City, NV 89703.

9. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

10. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

11. Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

12. Upon information and belief, the CRA Defendants, Experian, Equifax, Trans Union, disburse consumer reports to third parties under contract for monetary compensation.

13. At all relevant times, Defendants GM, Experian, Equifax, and Trans Union, acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14. Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV.   FACTUAL BACKGROUND

15. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

16. The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

17. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

18. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

19. The CRA Defendants Experian, Equifax and Trans Union report consumer information about Plaintiff and other consumers through the sale of consumer reports.

20. The CRA Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information:</u> this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information:</u> this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries:</u> this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

21. The CRA Defendants obtain consumer information from various sources, including furnishers that provide consumer information to the CRAs, and information the CRAs independently source themselves or through third party providers, vendors or repositories, including computerized reporting services like PACER.

22. Consequently, the CRA Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about consumers, without verifying or updating the information as required by § 1681(e)(b), despite possessing information that indicates their reporting is inaccurate.

23. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the

amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendants' reports.

24. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

25. The information reported by the CRA Defendants contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in the CRA Defendants' consumer reports.

26. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

27. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

28. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

29. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

30. However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

31. Although the CRA Defendants were notified of their inaccurate reporting and had the information necessary to correctly report Plaintiff's Account, the CRA Defendants failed to conduct a reasonable reinvestigation and correct the information.

32. Instead, the CRA Defendants followed unreasonable procedures that allowed them to blindly rely on the furnisher's deficient investigation and report its results, despite possessing conflicting information about the Account.

33. Rather than following reasonable procedures to assure maximum possible accuracy, the CRA Defendants inaccurately report information regarding debts even if that information ignores or contradicts information known and reported by the CRA Defendants themselves.

34. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate reporting following a consumer bankruptcy.

35. Therefore, the CRA Defendants are on continued notice of their inadequate reporting procedures, including those that result in inaccurate account and payment statuses, both before and after receiving a dispute from the consumer.

*Allegations Specific to the Credit Reporting of Plaintiff*

36. In or around April 2019, Plaintiff obtained an auto loan with Defendant GM Financial.

37. In or around July 2019, Plaintiff signed up for automatic recurring payments on his GM Financial account.

38. Between July 2019 and September 2021, Plaintiff's payments were all conducted through automatic payment.

39. In or around October 2021, Plaintiff called GM and switched the bank accounts for his automatic payment.

40. GM confirmed the switch had been made and confirmed that his October 2021

payment would be automatically paid.

41. In addition, Plaintiff's November 2021 was automatically paid.

42. However, for some unknown reason and without fault upon Plaintiff, Defendant GM Financial failed to automatically withdraw Plaintiff's payment for the month of December 2021.

43. In or around December 2021, Plaintiff discovered that his monthly payment was not made.

44. In or around December 2021, Plaintiff reached out to GM Financial and spoke to a representative.

45. The representative confirmed Plaintiff's banking account information and confirmed that GM had the correct information.

46. Moreover, the representative indicated that the processing error was GM's fault and the error would not result in a late payment being reported to the credit reporting agencies.

47. However, in or around December 2021, Defendant GM Financial began to report that Plaintiff was 30 days late to the credit reporting agencies.

48. In or around January 2022, Plaintiff obtained his Experian, Equifax, and Trans Union consumer reports to ensure Plaintiff's credit account tradelines were being reported accurately.

49. Plaintiff noticed that Plaintiff's GM account ending in no. 1113 (the "Account") was inaccurately reporting a 30-day late payment in December 2021 by all CRA Defendants.

50. In or around January 2022, Plaintiff contacted GM to dispute the inaccurate information about the Plaintiff's December 2021 payment being late.

51. However, GM refused to correct the inaccurate reporting, despite admitting that the reason for non-payment was their error and that Plaintiff was in fact enrolled in auto-pay.

*Plaintiff's Disputes*

52. On or about March 23, 2022, Plaintiff sent dispute letters to Experian, Equifax, and Trans Union disputing the inaccurate reporting of the Account.

53. The letters specifically advised CRA Defendants that Plaintiff set up automatic payments on the Account using GM's automatic recurring payment schedule, and Plaintiff informed CRA Defendants that he called GM to confirm the 2021 Automatic Payment Schedule had been properly set up.

54. Plaintiff informed the CRA Defendants that the GM representative confirmed that the 2021 Automatic Payment Schedule had been properly set up, and that the processing error was a GM processing error and *not* an error on the part of the Plaintiff, and, therefore, should not affect Plaintiff's credit score/rating.

55. Moreover, Plaintiff informed the CRA Defendants that his account has been on auto pay for years.

56. Upon information and belief, the CRA Defendants received Plaintiff's dispute letters.

57. Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to GM within 5 business days of receipt.

58. On or about April 1, 2022, Experian responded to Plaintiff's dispute letter and indicated that the Account would continue to report as 30 days past due for the month of December 2021.

59. On or about April 5, 2022, Equifax responded to Plaintiff's dispute letter but

9

continued to report the Account as 30 – 59 days past due starting in December 2021 through January 2022.

60. On or about April 3, 2022, Trans Union responded to Plaintiff's dispute letter but continued to report the Account as "Maximum Delinquency of 30 days in 12/2021<."

61. The CRA Defendants did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute form to GM, despite possessing information indicating the Account was set up to process automatic payments through GM's automatic recurring payment schedule, and that any payment processing error was solely the error GM and not the Plaintiff.

62. Rather than perform a reasonable investigation based on Plaintiff's dispute, and rely on information known by the CRA Defendants through Plaintiff's reported payment history on the Account, the CRA Defendants merely parroted information furnished by GM despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

63. GM failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax, and Trans Union.

64. GM failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, GM continued to furnish inaccurate data to Defendants Experian, Equifax, and Trans Union despite knowledge of Plaintiff's dispute and otherwise possessing information from which GM should have reported accurate information about the Account.

65. Notably, upon information and belief, GM properly processed Plaintiff's first 2021 Automatic Payment Schedule in October 2021, as reported by Experian, Equifax, and Trans Union.

66. Furthermore, upon information and belief, GM properly processed Plaintiff's second 2021 Automatic Payment Schedule in November 2021, as reported by Experian, Equifax and Trans Union.

67. Experian, Equifax, and Trans Union's reporting was patently false and/or materially misleading, as Plaintiff reasonably relied on GM's automatic recurring payment schedule to pay the monthly balance to the Account to ensure continued current payment, and any processing error was the sole fault of GM (as admitted by GM), which Plaintiff believes were also reported to CRA Defendants.

68. The CRA Defendants failed to report the Account's accurate payment history even after Plaintiff's dispute.

69. The CRA Defendants reported inaccurate payment statuses that indicate the Account was delinquent/late.

*Plaintiff's Damages*

70. Upon information and belief, had Defendants accurately reported the Account with its correct payment history, Plaintiff's credit scores would have been significantly higher

71. In addition, in or around March 2022, Plaintiff was attempting to obtain a mortgage.

72. Plaintiff was unable to secure a mortgage because of the recent delinquency being inaccurately reported on his GM Financial account.

73. Moreover, in or around March 2022, Plaintiff was attempting to obtain an auto loan but was denied due to the inaccurate reporting by Defendants.

74. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to third parties during the process of Plaintiff's credit applications.

75. As a direct result of the CRA Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, credit denial(s) and other financial harm.

76. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V.    COUNT I
### CRA Defendants Experian, Equifax, and Trans Union
### (Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78. The FCRA requires consumer reporting agencies, like the CRA Defendants, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

79. The CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

80. Additionally, the CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants or reasonably available to Defendants.

81. The CRA Defendants inaccurately reported Plaintiff's Account as Delinquent/Past Due when Plaintiff was making payments on the Account through GM's automatic recurring

payment schedule, and GM confirmed that Plaintiff was in fact set up for auto-pay and the failure to make payment was GM's fault.

82. The CRA Defendants possessed information that indicated Plaintiff set up payment through GM's automatic recurring payment schedule.

83. Furthermore, CRA Defendants possessed information that the processing errors were the fault of GM and not that of the Plaintiff. Plaintiff reasonably believed that such processing errors would not affect his credit, as told to him by Defendant GM.

84. The CRA Defendants knew or should have known of their obligations under the FCRA. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving the CRA Defendants from which they are on notice of their unreasonable procedures concerning the reporting of debts during and after bankruptcy, including reaffirmed debts.

85. Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, Experian, Equifax and Trans Union continued to inaccurately report the Account as delinquent/late in December, 2021. Despite notice that the Account was set up to receive automatic payments through GM's automatic recurring payment schedule, and the ability to independently confirm the information detailed in Plaintiff's dispute, CRA Defendants continued to report inaccurate information.

86. The CRA Defendants failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on GM's investigation of the dispute and blindly reporting its results despite possessing conflicting information.

87. The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that Plaintiff set up automatic payment through GM's automatic recurring payment schedule.

88. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

89. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

90. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

91. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified them of their inaccurate reporting of the Account.

92. Defendants Experian, Equifax and Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    a. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    b. Failing to consider all relevant information while investigating Plaintiff's dispute.

    c. Failing to include all relevant information when notifying GM of Plaintiff's dispute.

93. Instead of reasonably reinvestigating Plaintiff's dispute, the CRA Defendants continued to report the Account as delinquent/past due in December 2021.

94. The CRA Defendants' acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

95. The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

96. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting on Account, and otherwise failing to report that the debt was current.

97. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

98. The CRA Defendants are a direct and proximate cause of Plaintiff's damages.

99. The CRA Defendants are a substantial factor in Plaintiff's damages.

100. Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

### VI.    COUNT II
**Defendant GM**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

101. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

102. The FCRA requires that upon receipt of a consumer's dispute from a CRA, furnishers of information like GM, conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting

agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

103. GM knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and detailed in case law.

104. Additionally, GM possesses or could easily obtain substantial written materials that detail its duties as a furnisher under the FCRA. Despite knowing these legal obligations, GM acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

105. Plaintiff disputed the GM tradeline through all three national CRAs: Experian, Equifax, and Trans Union.

106. Thereafter, the consumer reporting agencies forwarded Plaintiff's disputes to GM, notifying GM that Plaintiff was disputing the information it had furnished about the Account.

107. GM received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge necessary to report the Account accurately.

108. GM continues to furnish inaccurate information about Plaintiff to all three CRAs, even though GM possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed.

109. The inaccurate GM Account materially and adversely affects Plaintiff's credit standing.

110. On at least one occasion within the past two years, by example only and without limitations, Defendant GM violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian, Equifax, and Trans Union.

111.	GM violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

(f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

112. GM unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

113. GM is a direct and proximate cause, as well as substantial factor in causing damage and harm to Plaintiff.

114. Consequently, GM is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rastelli Regalado respectfully requests judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

//

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 16th day of August 2022.

By: */s/ Steven Alpert*
Steven A. Alpert, NV Bar #8353
**PRICE LAW GROUP, APC**
5940 S. Rainbow Blvd., Suite 3014
Las Vegas, Nevada 89118
Phone: (702) 794-2008
E: alpert@pricelawgroup.com
*Attorneys for Plaintiff,*
*Rastelli Regalado*