Steven A. Alpert, NV Bar # 8353
**PRICE LAW GROUP, APC**
5940 S Rainbow Blvd, Suite 3014
Las Vegas, NV 89118
T: (702) 794-2008
F: (866) 401-1457
alpert@pricelawgroup.com

*Attorneys for Plaintiff*
*Rastelli Regalado*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RASTELLI REGALADO,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION LLC; and AMERICREDIT FINANCIAL SERVICES, INC., d/b/a GM FINANCIAL,<br><br>Defendants. | **Case No.:** 2:22-cv-01309-RFB-NJK<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS EQUIFAX INFORMATION SERVICES, LLC AND EXPERIAN INFORMATION SOLUTIONS, INC'S MOTION TO DISMISS AND TRANS UNION LLC'S JOINDER TO EQUIFAX INFORMATION SERVICES, LLC AND EXPERIAN INFORMATION SOLUTIONS, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Plaintiff Rastelli Regalado ("Plaintiff" or "Mr. Regalado"), by and through his undersigned counsel, hereby submits his Response in Opposition to Defendant Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC's ("Equifax") Motion to Dismiss Plaintiff's Complaint (Doc. 020) and Defendant Trans Union LLC's ("Trans Union") Joinder to Experian and Equifax's Motion to Dismiss Plaintiff's Complaint and Motion on the Pleadings. (Doc. 021).

In support of this Response, Plaintiff relies upon the below Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Rastelli Regalado ("Plaintiff") filed a Complaint against Defendants Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union LLC (collectively, the "CRA Defendants") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* The CRA Defendants have brought a Motion to Dismiss asking the Court to find that Plaintiff has pled a legal issue rather than a factual inaccuracy. The CRA Defendants' request ignores Plaintiff's factual allegations. Plaintiff has stated a plausible inaccuracy in his credit reports which incorrectly states that he was late in making his December 2021 GM auto loan payment. Whether Plaintiff was actually late is plausibly determined by an investigation asking Defendant AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM") whether Plaintiff was in fact enrolled in autopay at the time, whether the failure to automatically withdraw the payment was GM's fault as admitted by GM to Plaintiff, and whether GM represented it would not report Plaintiff late due to its failure to withdraw the payment, as alleged by Plaintiff in the Complaint. *See Doc. 01*, Complaint, ¶ 36-51. If GM simply answers yes to these **factual inquiries**, then the CRA defendants have no need to delve into any legal ramifications of the auto loan. An affirmation by GM of the factual allegations pled by Plaintiff in the Complaint would show that his credit reports contained an inaccuracy by stating that he was not late on his payment when he was enrolled in autopay and it was GM that failed to automatically withdraw his payment, causing the payment to be late. As such, the reporting by the CRA Defendants was patently false and/or materially misleading. *Id.* at ¶ 67.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When analyzing a complaint under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Further, the Supreme Court has recognized, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly* 550 U.S. at 556.

## III. <u>FACTUAL BACKGROUND</u>

### A. Plaintiff Obtained an Auto Loan from GM

In or around April 2019, Plaintiff obtained an auto loan from GM. *See Doc. 01,* Complaint ¶ 36. In or around July 2019, Plaintiff signed up for automatic recurring payments on his GM Account. *Id.* at ¶ 37. Between July 2019 to September 2021, all of Plaintiff's payments were conducted through automatic payment properly and on time. *Id.* at ¶ 38. In or around October

2021, Plaintiff called GM and switched the bank accounts for his automatic payment. *Id.* at ¶ 39. GM confirmed the switch and confirmed that his October 2021 payment would be automatically paid. *Id.* at ¶ 40. In addition, Plaintiff's November 2021 payment was made via autopay, further confirming that autopay was indeed active. *Id.* at ¶ 41. However, in December 2021, for reasons unknown to Plaintiff, GM failed to automatically withdraw Plaintiff's payment. *Id.* at ¶ 42. In December 2021, Plaintiff discovered that his monthly payment was not made, Plaintiff reached out to GM and the GM representative confirmed that it had the correct bank information. *Id.* at ¶ 44-45. The GM representative also indicated that the processing error was GM's fault, and because the error was GM's fault, it would not result in a late payment being reported to the credit reporting agencies. *Id.* at ¶ 46.

However, in or around December 2021, despite GM's representations that it would not report Plaintiff as 30 days late for its failure to automatically withdraw his payment, GM began furnishing information to the credit reporting agencies indicating that Plaintiff was 30 days late on his Account. *Id.* at ¶ 47. In or around January 2022, Plaintiff obtained his consumer reports from the CRA Defendants. Plaintiff noticed that his GM Account ending in no. 1113 ("the Account") was inaccurately reporting as 30 days late by the CRA Defendants. *Id.* at ¶ 48-49.

### B. Plaintiff disputes the inaccurate reporting of the GM Account with CRA Defendants'

On or about March 23, 2022, Plaintiff sent dispute letters to the CRA Defendants disputing the inaccurate late payment on the Account. *Id.* at ¶ 52. The letters specifically advised the CRA Defendants that Plaintiff set up automatic payments on the Account using GM's payment platform and that he confirmed, with GM, that the autopay was properly set up. *Id.* at ¶ 53. Plaintiff also informed the CRA Defendants that a GM representative confirmed that the 2021 payment schedule was properly set up and had been used for years, and that the processing error

was a GM processing error and not Plaintiff's error. *Id.* at ¶ 53-54. Plaintiff explained that because it was GM's error, the representative indicated that the error would not affect his credit. *Id.* at ¶ 54.

Upon information and belief, Defendants received Plaintiff's dispute letters and forwarded the disputes to GM. *Id.* at ¶ 56. On or about April 1, 2022, Experian responded to Plaintiff's dispute letter and indicated that the Account would continue to report as 30 days past due in December 2021. *Id.* at ¶ 58. On or about April 5, 1022, Equifax responded to Plaintiff's dispute letter but continued to report the Account as 30-59 days past due from December 2021 to January 2022. *Id.* at ¶ 59. On or about April 3, 2022, Trans Union responded to Plaintiff's dispute letter but also continued to report the Account as "Maximum Delinquency of 30 days in 12/2021<." *Id.* at ¶ 60.

The CRA Defendants did not investigate Plaintiff's disputes and, pursuant to their unreasonable procedures, just forwarded an automated dispute to GM. *Id.* at ¶ 61. The CRA Defendants also failed to perform a reasonable investigation based on Plaintiff's dispute or rely on information known to the CRA Defendants through Plaintiff's Account's reported payment history but merely parroted information furnished by GM despite the awareness that the information was factually inaccurate and conflicted with information known by CRA Defendants. *Id.* at ¶ 62. The CRA Defendant's reporting was patently false and/or materially misleading, as Plaintiff reasonably relied on GM's autopay to ensure continued current payment, and any processing error was the sole fault of GM (as admitted by GM), which Plaintiff believes were also reported to CRA Defendants. *Id.* at ¶ 67. Defendants failed to report the Account's accurate payment history even after Plaintiff's dispute and indicated that the Account was delinquent/late. *Id.* at ¶ 68.

## IV. ARGUMENT

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*, "seeks to promote 'fair and accurate credit reporting' and to protect consumer privacy.'" *Trans Union LLC v. Ramirez*, 141 S. Ct. 2190, 2200, 210 L. Ed. 2d 568 (2021) (quoting § 1681(a)). Given these "goals, the Act regulates the consumer reporting agencies that compile and disseminate personal information about consumers." *Id.* In doing so, it "imposes a host of requirements concerning the creation and use of consumer reports." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 335 (2016). "Congress enacted [the] FCRA to ensure accurate reporting about the 'credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.'" *Gross v. Citimortgage, Inc.*, 33 F. 4th 1246, 1250 (9th Cir. 2022) (*quoting 15 U.S.C. § 1681(a)(2)*). "As an important means to this end, the Act sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (*quoting 15 U.S.C. § 1681(a)(4)*).

### A. Plaintiff has pled an inaccuracy sufficient to state a claim under the FCRA

In order to survive a 12(b)(6) motion, a complaint only needs "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 548. "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the illegality claimed in the complaint. *Id.* at 545. "A claim has facial plausibility when the pleaded content allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). To survive a 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *In re Jiffy Lube*

*Int'l, Inc., Text Spam Litig.*,847 F.Supp.2d 1253, 1256 (S.D. Cal. 2012) (citing, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

There are several elements that comprise claims under both § 1681e(b) and § 1681i of the Fair Credit Reporting Act ("FCRA"). For both claims, the plaintiff must be able to show, at a minimum, that his credit report contained inaccurate information. *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66-67 (1st Cir. 2008). "[A] credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decision.'" *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1163 (9th Cir. 2009) (*quoting Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

At this stage of litigation, the focus is on Plaintiff's allegations in the Complaint (which are taken as true), and not an actual evidentiary showing. The CRA Defendants' assertions that Plaintiff has not alleged a factual inaccuracy, or that the reporting was not patently incorrect or misleading is simply untrue and a modest review of the allegations in Plaintiff's Complaint illustrates this.

Plaintiff alleged that the CRA Defendants' "reporting was patently false and/or materially misleading, as Plaintiff reasonably relied on GM's automatic recurring payment schedule to pay the monthly balance to the Account to ensure continued current payment, and any processing error was the sole fault of GM (as admitted by GM)." *See Doc. 01*, ¶ 67. Plaintiff alleged that he was enrolled in autopay and that all his payments, including the October 2021 and November 2021 were automatically paid. *Id.* at ¶ 38-41. However, due to some unknown reason, Plaintiff's December 2021 was not automatically withdrawn. *Id.* at ¶ 42-43. Plaintiff contacted Defendant GM who confirmed it had the correct bank account information for Plaintiff, that the processing

error was GM's fault and that the error would not result in a late payment being reported to the credit reporting agencies. *Id.* at ¶ 44-46. Despite these representations by GM, it proceeded to report Plaintiff's Account as 30 days late in the month of December 2021. *Id.* at ¶ 47. Thereafter, Plaintiff proceeded to send dispute letters to the CRA Defendants explaining the reasons the GM Account information was reporting inaccurately. *Id.* at ¶ 52-55.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and grounds upon which it rests." *Twombly*, 550 U.S. at 545 (citing, *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A review of the allegations contained within Plaintiff's Complaint confirms that he has met his burden, that he has sufficiently pled an inaccuracy under the FCRA and he has given the CRA Defendants' fair notice of what his claims are and the grounds upon which they rest. For these reasons, the Court should deny the CRA Defendants Motion to Dismiss.

**B. Plaintiff's dispute is factual, not legal**

The dispute at issue in this matter is factual in nature. The CRA Defendants' argument that the dispute was a legal one, is simply not true and ignores the allegations in the Complaint. In fact, the CRA Defendants argument that Plaintiff's contentions are regarding a legal dispute are borderline absurd. The CRA Defendants' Motion states that Plaintiff's contentions are regarding "his legal argument as to why he failed to make a timely payment." *See Doc. 020,* pg. 5. Plaintiff's dispute does not require any type of legal determination or analysis, it only requires a **factual investigation**.

Plaintiff alleged that he was enrolled in autopay and all his payments to GM on the Account were made via autopay. *See Doc. 01,* ¶ 37-41. For some unknown reason and without fault upon Plaintiff, his December 2021 payment was not automatically withdrawn. *Id.* at ¶ 42.

When Plaintiff reached out to Defendant GM, it confirmed that it had Plaintiff's correct banking information on file, that he was enrolled in autopay, and the failure to automatically withdraw the payment was GM's fault. *Id.* at ¶ 43-46. In addition, Plaintiff alleged that GM informed him it would NOT report his account as being late due to its error. *Id.*

The above clearly shows that the dispute is a factual one. If GM simply affirms the above factual allegations as pleaded in the Complaint, then the CRA Defendants would not be required to delve into any legal ramifications. Defendants' misguided attempts to frame this as a legal dispute ignores the factual allegations actually pled by Plaintiff and is nothing more than an attempt to avoid complying with their duties and obligations placed upon them by the FCRA.

Under the favorable review accorded to Plaintiff's allegations at this point in the litigation, the Court must find that Plaintiff was enrolled in autopay, GM failed to withdraw his payment, GM admitted fault, and GM stated it would not report Plaintiff as being late due to its error. From this basis only, neither the CRA Defendants nor the Court need engage in any legal determination with respect to the disputed information.

**i. *Braun* and *Tuttobene* are materially different**

The CRA Defendants compare the facts of this case to those in the *Braun v. Trans Union LLC, et al,* Case No. 2:19-cv-06098-CJC(SKx), 2019 U.S. Dist. LEXIS 240171 (C.D. Cal. Oct. 10, 2019) and *Tuttobene v. Trans Union, LLC,* No. 2:19-cv-01999-APG-NJK, 2021 U.S. Dist. LEXIS 101472 (D. Nev. May 28, 2021) cases. However, a review of the factual background of those two cases will clearly illustrate that the cases are in fact not similar.

Although the *Braun* case cited by the CRA Defendants may have some similarities with this case, material differences exist that result in a different outcome on the same type of motion. In *Braun*, the plaintiff was signed up for autopay for her monthly auto lease payment with Volvo. *See Braun,* 2019 U.S. Dist. LEXIS 240171 at *2. Subsequently, plaintiff obtained a two-month

extension for her car lease, however, the autopay did not continue during that extension and resulted in a 30-day late payment. *Id.* at *2. The *Braun* plaintiff (1) did not allege that she ever spoke with Volvo after she realized the automatic payment was not withdrawn, (2) that Volvo ever informed her that her auto-pay was indeed active, (3) that Volvo was at fault for failing to withdraw the payment, and/or (4) that Volvo was NOT going to report her Account as late. Instead, the plaintiff's allegations rest on the argument that she did not realize her auto-pay would be terminated at the end of the original lease term and she should not be marked late as a result. *Id.* at *2.

The facts in *Braun* are not similar to the facts presented before the Court here. First, Plaintiff did not extend his auto loan term. Second, Plaintiff contacted GM when he realized that his automatic payment was not withdrawn. Third, GM informed the Plaintiff that it had the correct banking information. Fourth, GM confirmed Plaintiff's autopay was active. Fifth, GM informed Plaintiff that the failure to withdraw the payment was the fault of GM. Finally, GM informed Plaintiff that as a result of its failure to automatically withdraw his payment, it would not report his Account as 30-days late. These factual allegations, which are material, are missing from the case in *Braun.*

In *Tuttobene*, the plaintiff was disputing the 30-day late payment because he attempted to make a payment, however, his payment was rejected for inputting the wrong account number. *Tuttobene,* 2021 U.S. Dist. LEXIS 101472, at *1. By the time the plaintiff corrected the error, more than 30 days had passed from the payment's due date, and as a result he was marked late. *Id.* at *1. The court found that the reporting was not "patently inaccurate because [plaintiff's] payment was late, even though he attempted to make the payment on time." *Id.* at *6. Moreover,

the court found that the reporting was not materially misleading because the furnisher "never changed its position that [plaintiff's] payment was more than 30 days late." *Id.* at *6-7.

Unlike this case, there were no factual allegations establishing that the furnisher acknowledged any failure to make a payment was its own fault and there were no factual allegations establishing that the furnisher represented it would not report the plaintiff as late. Here, the Plaintiff has alleged that during his conversation with GM, it acknowledged that the late payment was caused by GM's failure to automatically withdraw the payment, not some action on the part of Plaintiff. Furthermore, GM represented to Plaintiff that it would NOT report his Account as late. Additionally, *Tuttobene* was decided on summary judgment, after the parties had an opportunity to conduct discovery. No discovery has been conducted in this case.

Defendants' Motion (incorrectly) argues that "questions of whether Plaintiff successful set up automatic recurring payments for his GM Financial account," and "why his December 2021 payment was not automatically withdrawn from his bank account" are legal disputes. *See Doc. 020,* pg. 8. Defendants' assertions are misplaced. Questions of whether Plaintiff had successfully set up autopay, that GM failed to withdraw the payment, that GM admitted it was at fault, and that GM would not report the Account as late due to its error are all factual questions that a shallow investigation, let alone a reasonable investigation (which is what the FCRA mandates), could answer.

The facts of this case are more appropriately compared with the facts in *Hurst v. Equifax Info. Servs., LLC*, No. SA-20-CV-1366-JKP-ESC, 2021 U.S. Dist. LEXIS 239227 (W.D. Tex. Dec. 15, 2021). The *Hurst* court was presented with a similar motion by CRA defendants requesting that plaintiff's Complaint be dismissed because the plaintiff had "pled a legal issue rather than a factual inaccuracy." *Id.* at *17. The plaintiff's complaint alleged that she had

entered into a residential lease with a landlord and "a clause within the lease allowed 'Armed Services member tenants and their family members and dependents to terminate the lease in the event they receive transfer orders after the date of the lease.'". *Id.* at *1-2. Sometime after the lease was executed, the plaintiff's armed service parent received transfer orders and "[t]hat same month, the Landlord verbally terminated the lease" after being notified of the transfer order." *Id.* at *2. Subsequently, the landlord retained a third-party debt collector to collect the "alleged outstanding balance for the entirety of the terminated lease term" and reported furnished information the credit reporting agencies indicating that plaintiff owed a debt. The plaintiff alleged the information "is inaccurate since the lease was properly terminated with the Landlord" and the plaintiff was therefore not responsible for the lease balance.

The *Hurst* court rejected the CRA defendants' argument that plaintiff pled a legal issue rather than a factual inaccuracy. *Id.* at *17. The court stated that "[w]hether [p]laintiff is responsible for the alleged debt is plausibly determined by an investigation asking the Landlord whether it had terminated the lease." *Id.* at *17. "If the Landlord simply answers yes to that factual inquiry, then the credit reporting agency has no need to delve into any legal ramifications of the terminated lease." *Id.* at *17-18. For those reasons, the court denied the CRA defendants' joint motion for judgment on the pleadings.

Similar to *Hurst*, the Plaintiff in this matter has presented a factual inaccuracy. The Plaintiff has alleged (and the Court must accept as true for purposes of this Motion), that GM confirmed he was enrolled in autopay, stated that the failure to withdraw the payment was GM's fault, and that GM would not report him as being late. This is virtually identical to the type of factual inaccuracy presented in *Hurst* in which the plaintiff similarly alleged that the Landlord

verbally confirmed the lease was terminated and therefore the court found no legal determination was required.

For these reasons, the Plaintiff respectfully requests that the Court deny the CRA Defendants' Motion to Dismiss.

**C. The FCRA does not even contain an exception for legal inaccuracies**

Plaintiff has pled a factual inaccuracy and the Court need not decide whether the FCRA contains an exception for legal inaccuracies or not. However, if the Court were to find that Plaintiff has instead pled a legal issue (he has not), it is important to mention that the FCRA does not even contain an exception for legal inaccuracies.

The Consumer Financial Protection Bureau ("CFPB") has exclusive rule-writing authority for most provisions of the FCRA. 15 U.S.C. § 1681s(e). The CFPB interprets and, along with various other federal and state regulators, enforces the law's requirements. *Id.* § 1681s(a)-(c). These requirements include section 1681e(b)'s mandate that CRAs follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumer reports.

The CFPB, along with the Federal Trade Commission ("FTC"), filed a brief of amici curiae in support of the plaintiff-appellant and reversal in *Gia Sessa v. Trans Union LLC*, No. 22-87 (2d Cir. 2022).[1] The CFPB and FTC indicate that they "have a substantial interest in the issues presented" in the case because they believe the district court "adopted an unduly narrow interpretation of section § 1681e(b)'s reasonable-procedures requirement" that is not supported by the statutory text and the "holdings would substantially curtail section 1681e(b)'s reasonable-

---

[1] Attached hereto as Exhibit 1 is the brief of amici curiae filed by the CFPB, along with the FTC, in support of the plaintiff-appellant and reversal in *Gia Sessa.*

procedures requirement and undermine the remedial purpose of that provision, which is to ensure accurate credit reporting." *See CFPB Amicus Brief*, pg. 9/40.

The amicus brief argues that the FCRA does not distinguish between factual and legal accuracy, the FCRA does not contain an exception for legal inaccuracies (versus factual), it is difficult and arbitrary to distinguish between factual and legal accuracy and any inaccuracy in a consumer report, whether factual or legal, is sufficient to serve as a predicate element of FCRA liability. Should the Court determine that the Plaintiff has pled a legal issue, the Plaintiff respectfully requests that the Court deny the CRA Defendants Motion for the reasons discussed above, and the reasons outlined in the amicus brief by the CFPB and FTC arguing that the FCRA does not contain an exception for legal inaccuracies.

**D. In the alternative, Plaintiff requests leave to amend his Complaint**

"The court should 'freely give' leave to amend when there is no 'undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." *Bernstein v. Noteworld, LLC*, No. 2:10-cv-00374-GMN-PAL, 2010 U.S. Dist. LEXIS 80934, at *4 (D. Nev. Aug. 9, 2010) (*quoting Fed. R. Civ. P. 15(a)) (citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[L]eave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by an amendment." *Wilcox v. Portfolio Recovery Assocs., LLC*, No. 2:20-cv-01545-JAD-NJK, 2022 U.S. Dist. LEXIS 99393, at *3 (D. Nev. June 3, 2022).

While Plaintiff believes his Complaint clearly asserts that the reporting by the CRA Defendants is patently false and/or misleading, should the Court find otherwise, leave should be granted. The CRA Defendants will not be prejudiced in any manner, there will not be undue delay, and an amendment (should the Court find it necessary) would easily cure any deficiencies.

The CRA Defendants' assertions on the futility of any amendment rests on the fact that Plaintiff's dispute is regarding a legal issue, not a factual inaccuracy. However, Plaintiff has made clear through his arguments above that the dispute at issue is factual. As such, the CRA Defendants assertions regarding the viability of an amendment should be given no weight.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court deny the CRA Defendants' Motion to Dismiss.

Respectfully submitted this 26th day of October 2022.

By: */s/ Steven Alpert*
Steven A. Alpert, NV Bar #8353
**PRICE LAW GROUP, APC**
5940 S. Rainbow Blvd., Suite 3014
Las Vegas, Nevada 89118
Phone: (702) 794-2008
E: alpert@pricelawgroup.com
*Attorneys for Plaintiff,*
*Rastelli Regalado*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/ Youssef Hammoud*