UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Rastelli Regalado<br><br>Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc., et al.,<br><br>Defendants. | Case No. 2:22-cv-1309-RFB-NJK<br><br>**ORDER** |

### I.    INTRODUCTION

Before the Court in this Fair Credit Reporting Act ("FCRA") case is one pending motion: Defendants Equifax Information Services, LLC and Experian Information Solutions, Inc.'s Motion to Dismiss. ECF No. 20. For the reasons stated below, the Court denies the motion.

### II.    PROCEDURAL BACKGROUND

Plaintiff Rastelli Regalado ("Plaintiff") commenced this case on August 16, 2022 by filing a complaint against the following Defendants: Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), Trans Union LLC ("Trans Union"), and AmeriCredit Financial Services Inc., d/b/a GM Financial ("GM Financial"). ECF No. 1. Trans Union answered the Complaint on September 20, 2022. ECF No. 12. After four extensions of time, GM Financial filed its Answer on November 11, 2022. ECF No. 35. On October 12, 2022, Equifax and Experian filed a joint Motion to Dismiss. ECF No. 20. Also on October 12, 2022, Trans Union filed a Joinder to the Motion asserting that "[s]ince Trans Union has already filed its responsive pleading, this Joinder should be characterized as Trans Union's Motion for Judgment on the Pleadings in accordance with Fed. R. Civ. P. 12(c) and is based on all the identical reasons set

forth in Experian and Equifax's Motion." ECF No. 21. The motion was fully briefed on November 2, 2022. ECF Nos. 28, 31.

Magistrate Judge Koppe granted the parties' stipulated Discovery Plan and Scheduling Order on November 4, 2022; discovery was due by March 20, 2023, and dispositive motions were due by April 19, 2023. ECF No. 33. On January 12, 2023, the parties requested that discovery deadlines be extended. ECF No. 43. Judge Koppe granted the request and extended the close of discovery to June 19, 2023. ECF No. 44. On March 31, 2023, Plaintiff and Defendants Experian and Equifax filed a Stipulation to Stay Discovery. ECF No. 56. On April 3, 2023, Judge Koppe granted the stipulation staying discovery. ECF No. 57.

On March 28, 2023, Plaintiff and GM Financial reached a preliminary settlement. ECF No. 53. Plaintiff and GM Financial filed a stipulation for dismissal on August 7, 2023. ECF No. 68. The Court granted the stipulation the next day, dismissing Defendant GM Financial from the case with prejudice. ECF No. 70.

On June 5, 2023, the Court scheduled a hearing on the pending Motion to Dismiss to be held on June 9, 2023 at 9:30 AM. ECF No. 58. On June 6, 2023, Plaintiff filed an unopposed motion to continue the hearing, due to prior commitments of counsel. ECF No. 59. The Court granted the Motion and ordered that a new hearing would be set. ECF No. 60. However, in reviewing the parties' briefing, the Court has identified that no hearing was requested by the parties and further finds that no hearing is required to address the pending motion. This order follows.

### III. FACTUAL ALLEGATIONS

Plaintiff alleges violations of the Fair Credit Reporting Act ("FRCA"), under 15 U.S.C. §§ 1681e(b) and 1681i.

In his Complaint, Plaintiff alleges the following: in or around April 2019, Plaintiff obtained an auto loan with GM Financial. In or around July 2019, Plaintiff signed up for automatic recurring payments on his GM Financial account. In or around October 2021, Plaintiff called GM Financial and switched the bank accounts for his automatic payment. GM confirmed the switch had been made and confirmed that Plaintiff's October 2021 payment would be automatically paid.

In November 2021, Plaintiff's next payment was automatically paid. However, Plaintiff's December 2021 payment was not automatically made. In or around December 2021, Plaintiff discovered that this payment was not made, and he spoke with a GM Financial representative to report the issue. The representative confirmed that Plaintiff's banking information on file was accurate, and further indicated that the missed payment was a result of a processing error by GM Financial. The representative further reassured Plaintiff that credit reporting agencies would not be notified of the late payment. ECF No. 1 at ¶¶36-46.

However, GM Financial reported the missed December 2021 auto loan payment to CRA Defendants. In or around January 2022, Plaintiff contacted GM Financial to dispute this inaccurate information. However, GM Financial refused to correct the reported information. Id. at ¶¶ 47-51.

On or about March 23, 2022, Plaintiff sent dispute letters to CRA Defendants disputing the missed payment report. The letters advised the CRA Defendants that Plaintiff set up automatic payments on the Account using GM Financial's automatic recurring payment schedule, and that Plaintiff called GM Financial to confirm the 2021 Automatic Payment Schedule had been properly set up. The CRA Defendants received Plaintiff's dispute letters and notified GM Financial of the dispute within five days of receipt. Id. at ¶¶ 52-57.

On or about April 1, 2022, Experian responded to Plaintiff's dispute letter and indicated that the Account would continue to report as 30 days past due for the month of December 2021. On or about April 5, 2022, Equifax responded to Plaintiff's dispute letter but continued to report the Account as 30–59 days past due starting in December 2021 through January 2022. On or about April 3, 2022, Trans Union responded to Plaintiff's dispute letter but continued to report the Account as "Maximum Delinquency of 30 days in 12/2021." Id. at ¶¶ 58-60.

The CRA Defendants did not investigate Plaintiff's dispute. Although they possessed information showing that Plaintiff's account was set up to process payments through GM Financial's automatic recurring payment schedule, and knowledge that any payment processing error was traceable to GM Financial rather than Plaintiff, CRA Defendants merely passed along Plaintiff's dispute to GM Financial. In the end, the CRA Defendants merely parroted information furnished by GM Financial, even though they knew that GM Financial's interpretation was

factually inaccurate and conflicted with information already in their possession. Id. at ¶¶ 61-62.

GM Financial failed to review all relevant information regarding the dispute, failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from CRA Defendants, and furnished false information to CRA Defendants when it should have reported accurate information about Plaintiff's account. Id. at ¶ 64.

CRA Defendants reporting was false and misleading, as Plaintiff reasonably relied on GM Financial's automatic recurring payment schedule to pay the monthly balance on his loan, and CRA Defendants were aware of these facts. CRA Defendants did not report the accurate payment history for Plaintiff's account, even after Plaintiff's dispute, and instead indicated that the account was delinquent or late. Id. ¶ 67-69.

Had CRA Defendants accurately reported the status of Plaintiff's account, Plaintiff's credit scores would have been significantly higher and Plaintiff would have been able to obtain a mortgage in March 2022 when he applied for one. Instead, he was informed that due to CRA Defendants' reporting, he would not be eligible for the mortgage he sought. CRA Defendants inaccurate reporting of Plaintiff's auto loan account, along with other information related to Plaintiff, was published to third parties during the process of Plaintiff's credit. Id. at ¶ 70-74. Due to Defendants' actions, Plaintiff has suffered from financial harm and other injuries, including mental anguish, loss of sleep, reputational damage, and feelings of humiliation. Id. at ¶ 76.

## IV.    LEGAL STANDARD

### A. Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations,"

but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## V.     DISCUSSION

Defendants first argue that Plaintiff's claim must be dismissed because Plaintiff fails to plead or prove an inaccuracy in his credit report or credit file as required by the FRCA. They assert that it is undisputed that Plaintiff's 2021 GM Financial payment was late, as Defendants reported. Defendants point out that Plaintiff admits that the payment was late because of GM Financial's failure to automatically withdraw the funds from his bank account. Second, Defendants argue that only factual inaccuracies, as opposed to legal disputes between a consumer and a furnisher of information, can give rise to liability under the FCRA because CRA's are not required to adjudicate legal disputes between a consumer and furnisher of credit information. They argue that Plaintiff's claim does not involve a factual inaccuracy that could have been uncovered by reasonable investigation. Defendants contend that Plaintiff is mounting an impermissible collateral attack on the legal validity of his debt through a FRCA reinvestigation claim.

Plaintiff counters that he has sufficiently pled that the credit report was patently incorrect or misleading and therefore has pled an inaccuracy. Plaintiff also argues that the CRA Defendants are not required to conduct any legal analysis based on these allegations in the Complaint. Questions of whether Plaintiff had successfully set up autopay, that GM failed to withdraw the

payment, that GM admitted it was at fault, and that GM would not report the Account as late are all factual questions that a shallow investigation, let alone a reasonable investigation would answer. Plaintiff further asserts that even if the issue was a legal rather than factual inaccuracy, the FRCA does not distinguish between the two. Plaintiff references a Consumer Financial Protection Bureau's ("CFPB") amicus brief in which the CFPB purportedly argued that it is difficult to distinguish between legal and factual inaccuracies and either is sufficient to serve as a predicate element of FRCA liability.

### a. Federal Credit Reporting Act

"Congress enacted the Fair Credit Reporting Act in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007)). "As an important means to this end, the Act sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" Id. (alteration in original) (quoting 15 U.S.C. § 1681(a)(4)). The Court applies "a liberal construction in favor of consumers when interpreting the FRCA." Shaw v. Experian Info. Sols. Inc., 891 F.3d 749, 755 (9th Cir. 2018).

### i. Section 1681e(b)

Section 1681e(b) of the FCRA requires the consumer reporting agency to "follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates." 15 USC § 1681e(b). Liability under 1681e(b) "is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995). To bring a 1681e claim, the "consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information." Id. Inaccurate for the purposes of FCRA means information that is either (1) "patently incorrect" or is (2) "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Id. Once the consumer has made a prima facie showing of inaccuracy, he or she must next show that the consumer reporting

agency failed to follow reasonable procedures to assure the maximum possible accuracy of the information. 15 U.S.C. § 1681e(b).

The Court finds that Plaintiff has adequately raised a § 1681e(b) claim.

Defendants argue that Plaintiff's § 1681e(b) claim fails to make a prima facie showing of inaccuracy. Defendants assert that the information on the report was accurate in so far as Plaintiff admits that a missed payment occurred when the funds for his auto loan payment did not get withdrawn from his bank account. The Court disagrees with Defendants' characterization of the facts in the Complaint and finds that Plaintiff has pled that the information was "patently incorrect" and "misleading." Plaintiff alleges that GM Financial admitted to the processing error and expressly represented to him that the missed payment would not be reported and would not impact his credit report. That GM nonetheless shared missed payment information with the CRA's, which impacted Plaintiff's credit, raises a plausible inference that either GM failed to communicate the information accurately to the CRA or the CRA misreported the information itself. In either case, Plaintiff is fundamentally challenging the accuracy of the statements, including whether the account was "actually past due" in light of GM's representations to him that this specific information would not be on his credit report.

In addition, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." Shaw, 891 F.3d at 757 (internal citation and quotation marks omitted). As noted, a report is materially misleading if "it can be expected to adversely affect credit decisions." Id. at 756. The Court finds that CRA Defendants' reporting of Plaintiff's Account as past due could be misleading in a way that adversely affects an individual's creditworthiness. See Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 891 (9th Cir. 2010) ("a consumer who avails herself of a good or service but defaults on payment would be considered less creditworthy than one who does not, regardless of how legally sound her reasons for default are.") Plaintiff alleges that GM admitted fault to the processing error, told Plaintiff the error would not affect his credit, and believes that GM reported its fault for the processing error to the CRA Defendants. At this stage of the pleadings, Plaintiff plausibly pleads that the report was materially misleading because he

alleges that GM reported the relevant information regarding fault to the CRA Defendants, yet the CRA Defendants nonetheless reported the Account as delinquent.

### ii. Section 1681i

Section 1681i(a)(1)(A) outlines the scope of the reinvestigation required by consumer reporting agencies. It states in part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C. §1681i(a)(1)(A).

"[W]hat constitutes a "reasonable reinvestigation" will vary depending on the circumstances of the case." Id. at 756.

The Court finds that Plaintiff sufficiently and plausibly pleads a §1681i claim, especially where, as here, a minimal investigation by the CRA Defendants would have revealed GM Financial's error. In Dennis v. BEH-1, LLC, 520 F.3d 1066, 1070-71 (9th Cir. 1066), Experian failed to conduct a reasonable reinvestigation after being notified of disputed legal information because Experian did not take minimal steps to discover the inaccuracy, including consulting the court docket in the plaintiff's case or examining the documents that had been retrieved from the plaintiff's court file.

Here, Plaintiff alleges that he sent dispute letters on or about March 23, 2022, to the CRA Defendants disputing the inaccurate reporting of the account. As in Dennis, the CRA Defendants here needed to take minimal action to confirm Plaintiff's dispute. The letters specifically advised the CRA Defendants that Plaintiff set up automatic payments on the account using GM's automatic recurring payment schedule, that the GM representative confirmed the 2021 Automatic Payment Schedule had been properly set up, and that GM admitted the processing error was solely GM's fault. To determine whether Plaintiff was correct, the CRA Defendants could have simply asked GM to confirm this information. Instead, Plaintiff alleges that the CRA's did not investigate

Plaintiff's dispute and merely forwarded an automated dispute form to GM.

Defendants rely on Carvalho, 629 F.3d at 891-92 to argue that Plaintiff's claim impermissibly asks the CRA Defendants to act as a tribunal. The Court disagrees. Unlike the dispute at issue in Carvalho, Plaintiff is not requesting the credit reporting agencies to "undertak[e] a searching inquiry" of Plaintiff's legal defenses to payment "that could only be resolved by a court of law." Id. (internal quotations omitted). According to Plaintiff's Complaint, at the time that Plaintiff reported the inaccuracy to the CRA's, there was no legal dispute with GM about his obligation to pay the debt. GM admitted that the processing error was their fault and GM informed Plaintiff that the error would not be reported to the credit agencies, nor would it impact his credit report. The CRA's therefore only needed to confirm this information upon receipt of Plaintiff's dispute letters.

When conducting a reinvestigation, the CRA "must exercise reasonable diligence." Dennis, 520 F.3d at 1071. The allegations, taken as true, that the CRA's did not conduct any investigation but merely forwarded an automated dispute to GM, "fall[] far short of this standard." Id. See also Bradshaw v. BAC Home Loans Servicing, LP, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011) ("Many courts . . . have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditors information through the ACDV [automated consumer dispute verification] process without additional investigation.").

The Court therefore finds that Plaintiff has pled facts sufficient to support his Section 1681e(b) and Section 1681i claims.

### VI. CONCLUSION

**IT IS ORDERED** that Defendant Equifax and Experian's (and Trans Union through Joinder) Motion to Dismiss (ECF No. 20) is **DENIED.**

**IT IS FURTHER ORDERED** that the stay on discovery is lifted. The parties shall submit a revised Discovery Plan and Scheduling Order consistent with this Order by **October 13, 2023**.

///

DATED: September 30, 2023

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**